FILED
2019 Nov-20  AM 10:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| **TAMMY W. SWINDALL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE** |
| ) | **NUMBER: _____** |
| **LIFE INSURANCE COMPANY** ) | |
| **OF NORTH AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Comes now the Plaintiff, Tammy W. Swindall, and hereby files her Complaint against Life Insurance Company of North America.

## PARTIES

1.     The Plaintiff, Tammy W. Swindall ("Mrs. Swindall"), is an insured under Alacare Home Health Services, Inc. Long Term Disability Insurance Policy No. LK-961682 ("the Plan").

2.     Defendant, Life Insurance Company of North America ("Cigna"), is the Administrator of the Plan.  Upon information and belief, Cigna is a foreign corporation which conducts business generally in the State of Alabama and specifically within this District.

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. §1132.   This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §1132(a), (e)(1) and (f) and 28 U.S.C. §1131. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

4.     The Plaintiff in this case was subjected to improper claim handling procedures by Cigna as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Mrs. Swindall's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Mrs. Swindall, as an employee insured for disability, was supposed to be treated as a beneficiary by the Defendant as statutory fiduciaries. Instead, the Defendant has breached those duties and victimized Mrs. Swindall by engaging in improper claim handling procedures.  As described in more detail below, the Defendant has clearly engaged

in bad faith claim handling and Mrs. Swindall, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Mrs. Swindall is an insured for benefits under the Plan. Cigna is the administrator of the Plan. The Plan provides insureds, like Mrs. Swindall, LTD benefits.

6.     Mrs. Swindall, a woman fifty-three (53) years of age, worked at Alacare Home Health Services, Inc. as a Registered Nurse until her disabilities forced her to stop working on or about May 6, 2012.

7.     Mrs. Swindall's medical disabilities include progressive encephalopathy, conversion disorder with attacks and seizures, post-traumatic stress disorder, frequent migraines, diabetes mellitus, sleep apnea, hypertension, degenerative disc disease, and depression. The symptoms of her impairments and the side effects of the medications prescribed render Mrs. Swindall unable to perform her occupation or any reasonable work.

8.     Mrs. Swindall was found to be disabled by the Social Security Agency ("SSA") on May 5, 2012 because the severity of one or more of her medically determinable impairments met listing criteria.

9.     Mrs. Swindall is currently receiving Social Security Disability Income.

10.     At the onset of Mrs. Swindall's disability in 2012, Dr. Kenneth Pilgreen ("Dr. Pilgreen"), Mrs. Swindall's treating neurologist, noted that she suffered from "a neurodegenerative process that is rapidly advancing with dementia as the primary feature."

11.     Mrs. Swindall applied for and began receiving LTD benefits under the Plan August 4, 2012 and continued receiving such benefits through July 24, 2017.

12.     Mrs. Swindall received roughly five (5) years of LTD benefit payments from Cigna.

13.     Mrs. Swindall received the aforementioned LTD benefit payments because Cigna determined that she met the Plan's definition of disability.

14.     By letter dated July 24, 2017, Cigna terminated Mrs. Swindall's LTD benefit payments, stating that she no longer fit the Plan's definition of disability.

15.     In termination letter dated July 24, 2017, Cigna failed to identify any significant change in circumstances explaining why Mrs. Swindall was suddenly capable of performing work after receiving LTD benefit payments for roughly five (5) years.

16.     In the aforementioned termination letter dated July 24, 2017, Cigna relied on the opinions of paid medical reviewers Drs. Kevin Boehle ("Dr. Boehle") and Aneta Predanic ("Dr. Predanic").

17.     In review dated July 20, 2017, Dr. Boehle determined that Mrs.

Swindall's conditions of complex partial seizure disorder and anoxic encephalopathy are co-limiting conditions with respective associated limitations and restrictions. Dr. Boehle also stated that Mrs. Swindall's treating providers' opinions were not well supported by "medically acceptable clinical or laboratory diagnostic techniques."

18.    In review dated May 15, 2017, Dr. Predanic determined that mood disorder and PTSD are co-limiting psychiatric conditions from which Mrs. Swindall suffers, with respective associated limitations and restrictions. Further, Dr. Predanic determined that Mrs. Swindall faces no functional limitations as a result of these diagnoses.

19.    The Plan at issue, as governed by ERISA and relied upon to deny Mrs. Swindall's long term disability benefits states, in part:

**Definition of Disability/Disabled**

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is: unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and unable to earn 60% or more of his or her Indexed Earnings.

20.    In medical record for appointment with Dr. Sanders dated May 17, 2017, Mrs. Swindall reported that the migraines she suffered from lasted up to a few days and caused severe pain that kept her bedridden. She complained of

weakness, falls, fatigue, trouble walking up stairs, decreased short-term memory, and noted that she was no longer driving due to her condition.

21.     In the aforementioned medical record, Dr. Sanders explicitly stated "[t]he patient is disabled." Further, he noted that she was positive for lack of energy, frequent headaches, weakness, change in sensation, problems walking or balance, tremors, episodes of visual loss, insomnia, depression, and anxiety.

22.     In the medical record for appointment dated July 20, 2017, Dr. Hanna noted that Mrs. Swindall's symptoms are exaggerated by stress, weight bearing, prolonged standing, prolonged sitting, and lifting.

23.     In Physical Ability Assessment dated July 24, 2017, three (3) days before Cigna terminated Mrs. Swindall's LTD benefits, Dr. Hanna noted that Mrs. Swindall "cannot return to work" because of the numerous physical restrictions she is limited by.

24.     The treatment records of Mrs. Swindall's treating Psychologist, Dr. Litton, noted that Mrs. Swindall had complained of frequent conversion attacks at two (2) of her appointments during July 2017.

25.     Mrs. Swindall underwent an electroencephalogram ("EEG") at her September 12, 2017 appointment with Dr. Sanders to evaluate for seizure activity. The results of the EEG were abnormal. While there were no epileptiform discharges during the EEG recording, Dr. Sanders noted that this does not rule out

6

the diagnosis of a seizure disorder.

26.    The medical record for Mrs. Swindall's November 11, 2019 appointment with Dr. Sanders states that Mrs. Swindall's migraines had gotten worse in the past two (2) months and were lasting longer. At the time of the appointment, Mrs. Swindall reported having 5-6 migraines per month, with each lasting 12-24 hours. Mrs. Swindall complained of blurred vision, poor balance, little endurance, and leg pain when walking.

27.    By and through counsel in letter dated January 18, 2018, Mrs. Swindall appealed the termination of her LTD benefits. (*See* Appeal letter without attachments dated January 18, 2018, attached hereto as Exhibit "A"). Mrs. Swindall included with her appeal letter additional medical records outlining the decline of her condition. Mrs. Swindall also attached a copy of her entire Social Security file.

28.    Mrs. Swindall's husband, Daniel Swindall ("Mr. Swindall"), submitted a declaration with the January 18, 2018 appeal letter for Cigna's review. Under penalty of perjury, Mr. Swindall stated that "Tammy has constant problems with her balance along with weakness in her extremities causing frequent falls and it makes it very hard to go to doctors appointments. Along with these symptoms, she has frequent migraines which add to these problems." Mr. Swindall further indicated that "the medicines she is taking make her very drowsy and this is

another reason she has trouble communicating." (*See* Declaration of Daniel Swindall, attached hereto as Exhibit "B ").

29.     Despite providing proof of her disability, Cigna upheld its previous decision to terminate Mrs. Swindall's LTD benefits through letter dated April 16, 2018.

30.     In the aforementioned termination letter dated April 16, 2018, Cigna relied on the opinions of paid reviewers Drs. Weiran We ("Dr. We"). Matthew Kalp ("Dr. Kalp"), and Kevin Smith ("Dr. Smith").

31.     In report dated March 19, 2018, Dr. We determined that Mrs. Swindall is not functionally limited from a mental health perspective. Dr. We also noted "the treating provider's opinion is not well supported by medically acceptable clinical diagnostic testing and is inconsistent with the other substantial evidence in the claim file because the period of time under review is 7/28/17 and forward."

32.     In report dated March 19, 2018, Dr. Kalp found that Mrs. Swindall is functionally limited. He reasoned that the medical records indicated that Mrs. Swindall was having worsening migraines at a frequency of 6-8 migraines per month. Dr. Kalp stated, "due to the documentation history of migraine headaches, it is recommended that the customer push, pull, lift, or carry no more than 25 pounds occasionally to avoid exertion which may trigger or exacerbate migraines."

Additionally, Dr. Kalp noted in his report "due to the history of conversion disorder with attacks and seizures, she should not drive or operate heavy machinery until she is cleared by a physician or 6-12 months from the last attack."

33. In report dated March 26, 2018, Dr. Smith listed the following co-limiting conditions with associated restrictions and limitations: high blood pressure causing encephalopathy, chronic migraines without aura interaction and without status migrainosus, and seizures. Dr. Smith noted that Mrs. Swindall is functionally limited by chronic migraines and seizures, which continue despite being on medications.

34. By and through counsel in letter dated October 10, 2018, Mrs. Swindall submitted a second appeal of the termination of her LTD benefits.

35. Mrs. Swindall supplemented the aforementioned appeal letter dated October 10, 2018, by and through counsel in letter dated October 23, 2018, to which she attached additional medical records further substantiating her disability.

36. Despite providing proof of her disability both before the termination of benefits and throughout the appeals process, Cigna affirmed its previous denial of benefits and issued its final termination by letter dated December 20, 2018.

37. In final termination letter dated December 20, 2018, Cigna relied on the opinions of paid medical reviewers Drs. Sherry Leith ("Dr. Leith"), Antoinette Acenas ("Dr. Acenas"), and Roger Belcourt (Dr. Belcourt").

9

38.    In report dated November 20, 2018, Dr. Leith stated that Mrs. Swindall was without restrictions and limitations from a neurology perspective. Dr. Leith concluded that Mrs. Swindall was able to sustain an eight (8) hour work day, forty (40) hours per week with no need for restriction in work hours. Additionally, Dr. Leith stated that Mrs. Swindall had no neurologic conditions that would produce non-exertional limitations as she had no evidence of cognitive dysfunction. Further, Dr. Leith noted that Mrs. Swindall suffered no side effects that precluded her functionality.

39.    In report dated November 20, 2018, Dr. Acenas determined that Mrs. Swindall "has no psychological condition that supports a functional loss from 7/28/17 and continuing." Further, Dr. Acenas described Mrs. Swindall's diagnoses or bipolar mood disorder, mixed type and conversion disorder with attacks and seizures as diagnoses "not related to the major source of impairment."

40.    In report dated December 10, 2018, Dr. Belcourt stated there are "no restrictions and limitations necessary for any disability." Dr. Belcourt stated that Mrs. Swindall's treating provider's opinion is not well supported and "there are no objective findings that support a degree of pain or fatigue that is severe enough to preclude functioning."

41.    Upon request from Cigna, Dr. Belcourt clarified his comment regarding lack of objective findings to mean "there is an absence of objective

findings in the medical records to support functional limitations secondary to pain and fatigue."

42.    In medical record for appointment dated April 3, 2018, Dr. Sanders noted that Mrs. Swindall's headaches had increased and she had fallen several times. The record details that Mrs. Swindall was experiencing 2-3 migraines a week, with each lasting 4-12 hours.

43.    In medical record for appointment dated September 27, 2018, Mrs. Swindall was diagnosed by Dr. Vishala Chindalore ("Dr. Chindalore") with fibromyalgia. At this appointment, Mrs. Swindall noted that the symptoms of pain she experienced were occurring constantly.

44.    As of this date, Mrs. Swindall has been denied benefits rightfully owed to her under the Plan.

45.    In accordance with the regulatory settlement agreement Cigna entered into with various states, Cigna agreed to take corrective actions to enhance claim procedures to improve the claim handling process of current and future insureds. Among other things, Cigna agreed to provide clear and express notice to claimants of the information to be collected and take reasonable steps to work with the claimant to identify and obtain such information.

46.    Mrs. Swindall has met and continues to meet the Plan's definition of disabled.

47.     Mrs. Swindall has exhausted any applicable administrative review procedures and Defendant's refusal to pay benefits is both erroneous and unreasonable and has caused tremendous financial hardship on Plaintiff.

## STANDARD OF REVIEW

48.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

49.     "A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

50.     When discretionary authority is clearly granted and "the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a 'heightened' arbitrary and capricious standard of review." *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (2000).

51.     The Plan at issue here contains no clear language granting Cigna discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, entitling Plaintiff to *de novo* review.

52.     "Under certain circumstances, a plan administrator's failure to comply with the letter of the claims procedures outlined in ERISA requires court to eschew

the more deferential arbitrary and capricious review normally applied to an administrator's discretionary decisions in favor of a more searching de novo review." *Halo v. Yale Health Plan*, 819 F.3d 42, 47 (2d Cir. 2016).

53.    "In other words, a plan's failure to establish or follow the claims-procedure regulation entitles the claimant to have his or her claim reviewed de novo in federal court." *Id.* at 53. An inability to "keep the beneficiary apprised to the claim assessment process" or "deliver "reasonably timely and detailed decisions" are invalid exercises of discretion. *Id.* at 47.

54.    Here, Cigna did not provide adequate detail supporting their decision to deny Mrs. Swindall's claim for long term disability benefits.

55.    In the alternative, if the Court finds that Plan is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as Cigna's decision to terminate Mrs. Swindall's LTD benefits was arbitrary and capricious.

56.    Upon information and belief, Defendant evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

57.    Defendant breached its fiduciary duty to Mrs. Swindall by erroneously denying the LTD benefits to which she is entitled under the Plan.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

### A.    Defendant's Termination of Plaintiff's LTD Benefits was both Erroneous and Unreasonable.

58.    Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

59.    Courts have held that the determinations of plan administrators will be overturned when such determinations are without reason or erroneous as a matter of law. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (2000).

60.    Throughout the entirety of the claim review process, Cigna "cherry-picked" Mrs. Swindall's records for information supporting its denial.

61.    Many of Cigna's paid medical reviewers reached the conclusion that Mrs. Swindall was not disabled because of a lack of objective evidence. The Plan does not require that such an objective standard be met in order to satisfy the definition of disability. Accordingly, many of Mrs. Swindall's disabling impairments do not have or require objective testing/evidence to be accurately diagnosed.

62.    All of Cigna's paid reviewers admitted that Mrs. Swindall suffers from co-limiting conditions with associated restrictions and limitations.

63.    Most notably, paid reviewer Dr. Kalp found Mrs. Swindall to be functionally limited due to the intensity and frequency of her migraine headaches and her symptoms of conversion disorder with associated attacks and seizures.

64.    Dr. Smith, another paid reviewer, determined that Mrs. Swindall is functionally limited by chronic migraines and seizures which continue despite

being on medications.

65.     Despite the foregoing opinions provided by their own paid experts, Cigna reached the predetermined conclusion that Mrs. Swindall is capable of returning to work by ignoring the plethora of evidence indicating that Mrs. Swindall is totally disabled.

66.     Accordingly, Defendant's contention that Mrs. Swindall failed to prove that she was disabled under the Plan must be rejected as Cigna's decision to deny Plaintiff's benefits necessarily imposed a standard that was not required by the Plan's provisions. *See Soucy v. First UNUM Life Ins. Comp.*, 2011 U.S. Dist. LEXIS 27938*89-90.

67.     Defendant's decision to deny benefits under his LTD policy was erroneous and grossly unreasonable.

**B.     Defendant's Termination of Plaintiff's LTD Benefits was not Supported by Substantial Evidence.**

68.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

69.     Defendant's actions, as referenced above, entitle the Plaintiff to a *de novo* standard of review pursuant to § 1132(a)(1)(B).

70.     However, should this Court determine that Defendant is entitled to a heightened arbitrary and capricious standard of review, Defendant has failed to support the termination of benefits with substantial evidence as required by law.

71.     The *Pinto* Court held that "[u]nder the arbitrary and capricious standard, an administrator's decision will only be overturned if it is without reason, unsupported by substantial evidence or erroneous as a matter of law[.]" *Id.* at 378.

72.     The final termination letter, like the previous letters, improperly found that Mrs. Swindall had no physical or mental functional impairment which would preclude her from performing any reasonable occupation. This determination was made through Cigna's "cherry-picked" assessment of the record for evidence that supports its termination and gives little or no weight to the plethora of evidence that supports Mrs. Swindall's disability.

73.     Cigna primarily relied on the independent medical reviews of physicians that have neither personally observed nor examined Mrs. Swindall.

74.     Despite recognizing that Mrs. Swindall has co-limiting conditions of complex partial seizure disorder and anoxic encephalopathy, Dr. Boehle stated in his July 20, 2017 report that Mrs. Swindall's treating provider's opinion was not well supported by medically acceptable techniques. Additionally, Dr. Boehle generated a list of Mrs. Swindall's medically necessary restrictions which support Mrs. Swindall's disability.

75.     Furthermore, Dr. Predanic acknowledged that Mrs. Swindall has the co-limiting conditions of mood disorder & PTSD. In her review of Mrs. Swindall's medical records, she states "Ms. Swindall has been complaining of memory loss,

with Dr. Sanders documenting at times, that she forgets how to spell words."

76.    Additionally, there is no indication that any of the reviewers employed by Cigna attempted to contact Mrs. Swindall's treating physicians for comment or clarification. They merely misconstrued the medical records to reach the predetermined conclusion that Mrs. Swindall is not disabled.

77.    Moreover, Cigna had the opportunity to conduct an independent medical examination of Mrs. Swindall. Such an opinion would be more reliable than merely a review of the records.

78.    Even if the Defendant could somehow overcome the inadequacy of the paid reviewer's findings, the findings would still stand alone as the only such findings in the Administrative Record suggesting that Mrs. Swindall might somehow have been able to return to work, and would remain overwhelmed by numerous treatment records suggesting the opposite. Accordingly, no reasonable mind could accept as adequate the evidence upon which the Defendant relied to support the decision to deny Mrs. Swindall's benefits

79.    Cigna's termination of Mrs. Swindall's LTD benefits was made without the support of substantial evidence indicating that Mrs. Swindall could perform the material and substantial duties of her own occupation.

C.    **Defendant Wrongfully and Unreasonably Failed to Consider the Opinions of Plaintiff's Treating Physicians.**

80.    Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

81.    A court "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).  The Court has recognized that "treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual." *Id.* at 832.

82.    "[C]ommon sense and a stream of legal precedent suggest [that] factual determinations of a treating physician are objectively more reliable." *Burt v. Metropolitan Life Insurance Co.,* No. 1:04-CV-2376-BBM, 2005 U.S. Dist. LEXIS 22810, at *33 (N.D. Ga. Sept. 16, 2005) (emphasis in original); *See also Finazzi,* 327 F. Supp. 2d at 795-96.

83.    Paid experts are more often than not pre-disposed or preconditioned. Courts have consistently expressed their skepticism of such "experts" and held their reviews to be the very essence of arbitrariness and capriciousness. *Bennett v. Kemper HAT-Svcs, Inc.* 514 F. 3d 547, 554-55 (6th Cir. 2008); *Montour v. Hartford Life and Acc. Ins. Co.,* 588 F. 3d 623 (9th Cir. 2009); *Regula v. Delta Family Care Plan* 226 F.3d. 1130, 1143 (9th Cir. 2001).  The Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an 'incentive to

make a finding of "not disabled" in order to save their employers money and preserve their own consulting agreements.'" *Nord,* 538 U.S. 822, 832, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). The fact that their reports are consistently in conflict with the opinion of treating doctors' determinations should be viewed as evidence of a structurally conflicted process that results in bias. Clearly, in Mrs. Swindall's case, these decisions indicate that her treating physicians' evaluations should be afforded greater weight than the opinions of Cigna's consultants.

84.   In weighing the opinions of Mrs. Swindall's physicians against those of the independent reviewers retained by the Defendant, the Court should consider the following factors: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) other relevant factors. *See Karanda v. Connecticut Gen. Life Ins. Co., et al.,* 158 F. Supp. 2d 192, 205 and n.8 (D. Conn. 2000) (citing *Durr v. Metropolitan Life Ins. Co.,* 15 F. Supp. 2d 205, 213 (D. Conn. 1998)).

85.   Mrs. Swindall's claim file is replete with medical records from her treating physicians extensively detailing her physical and mental limitations. Mrs. Swindall's physicians' assessments, treatment and medications they prescribed and administered, demonstrate that Mrs. Swindall's diagnosed conditions and symptoms thereof are extremely debilitating.

86.    Many of Mrs. Swindall's providers have treated her throughout the entirety of her disabling conditions. Through their years of examination and treatment they are in the best position to attest to Mrs. Swindall's disabling condition.

87.    At the onset of her disability in 2012, Dr. Pilgreen, Mrs. Swindall's treating neurologist, noted that she suffered from "a neurodegenerative process that is rapidly advancing with dementia as the primary feature."

88.    Her medical records substantiate Dr. Pilgreen's 2012 statement as Mrs. Swindall continually complained of issues with her short term memory.

89.    In medical record for Mrs. Swindall's May 17, 2017 appointment, Dr. Sanders found that she was positive for frequent headaches, weakness, changes in sensation, problems walking/balancing, tremors, and episodes of visual loss. Dr. Sanders also found Mrs. Swindall positive for joint pain, muscle aches, shoulder pain, swelling of joints, back pain, and neck pain.

90.    In July 24, 2017 Physician Ability Assessment completed by Dr. Hanna, Mrs. Swindall's treating physician, he explicitly stated that Mrs. Swindall cannot return to work. He further indicated a list of functions that Mrs. Swindall is unable to perform as a result of her disabling conditions.

91.    The results of Mrs. Swindall's September 20, 2017 EEG were abnormal. The EEG was performed roughly two (2) months after Cigna contends

that Mrs. Swindall no longer fit the Plan's definition of disability. In his analysis of the EEG results, Dr. Sanders stated that "the absence of epileptiform discharged during the EEF recording does not rule out the diagnosis of a seizure."

92.     At her November 17, 2017 appointment with Dr. Sanders, Mrs. Swindall noted that her headaches had gotten worse and were lasting longer. She continued to experience vision loss, poor balance, pain, and little endurance.

93.     Throughout August 2017, Mrs. Swindall reported that she suffered an alarmingly high number of conversion attacks with associated attacks and seizures.

94.     Unfortunately, Mrs. Swindall's condition has continued to worsen and multiply throughout the appeals process. On September 27, 2018, Mrs. Swindall was diagnosed with fibromyalgia.

95.     Mrs. Swindall's long-standing medical providers, who have no stake in the outcome of the case, reached the opinion that she was disabled based on their numerous personal examinations, testing and procedures. These decisions were based on the same evidence that Mrs. Swindall provided to Cigna.  Cigna's conclusion that Mrs. Swindall was not disabled was based merely on hired reviewers' "cherry-picked" assessment of her medical records. *See Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002)(finding that evidence in the administrative record did not support the revocation of benefits because the only doctors that disagreed with the treating physicians were non-

examining consultants hired by the insurance company); *see also Kalish v. Liberty Mutual*, 419 F.3d 501, 508 (6th Cir. 2005)("[w]hether a doctor has physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician").

96.     Mrs. Swindall's treating physicians have stated that her condition is debilitating to the effect that she does not have the ability to return to work.

97.     Cigna wrongfully failed to consider the well-informed opinions of Mrs. Swindall's treating physicians and instead relied on the opinion of parties that have never seen nor examined Mrs. Swindall in person.

**D.     Defendant's Sudden Termination of Plaintiff's LTD Benefits was Made without proof of any New and Significant Information.**

98.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

99.      "[A]n administrator is not precluded from denying a claimant benefits by virtue of the fact that it previously paid benefits if the administrator becomes aware of new information about the claimant's eligibility," however "unless information available to an insurer alters *in some significant way*, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments." *Paquin v. Prudential Ins. Co. of*

*Am.,* 2018 U.S. Dist. LEXIS 125231 (2018)(emphasis added).

100.   Mrs. Swindall received LTD benefits continuously for five (5) years.

101.   During the five (5) years throughout which Mrs. Swindall received LTD benefit payments, Cigna determined that Mrs. Swindall was disabled under the Plan.

102.   Mrs. Swindall suffers from permanent conditions that have deteriorated over time. Her disabling condition has been acknowledged by Cigna through their payment of her LTD benefits for an extended number of years.

103.   According to Cigna, Mrs. Swindall's LTD benefits were approved and paid from August 4, 2012 until July 24, 2017 because Cigna determined that she was unable to perform the material and substantial duties of her regular occupation or any other reasonable occupation.

104.   Since the onset of her disabling conditions, Mrs. Swindall's condition has substantially declined.

105.   Cigna failed to identify any new information about Mrs. Swindall's disability that alters in some *significant* way their previous determination that Mrs. Swindall is disabled under the Plan.

106.   Accordingly, Cigna's decision to deny Mrs. Swindall's LTD benefits was wrongful, unreasonable, and made without knowledge of any new information that significantly alters its previous decision that Mrs. Swindall is disabled under

the Plan.

**E.     Defendant Terminated Plaintiff's LTD Benefits without Consideration of Plaintiff's Subjective Complaints.**

107.   Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

108.   "It is unreasonable for a disability claims administrator to deny a claim for a lack of objective medical evidence when the claimant has provided ample subjective evidence of a disability and the administrator has neither identified any objective evidence that the claimant could have supplied to support the claim and has not had the claimant undergo an independent medical examination or a similar in-person probative procedure to test the validity of her complaints." *Creel v. Wachovia Corp.*, 2009 U.S. App. LEXIS 1733, at 28* (11th Cir. Fla. Jan. 27, 2009).

109.   An administrator may not exclude a claim for lack of objective medical evidence unless that standard was made "clear, plain and conspicuous enough [in the policy] to negate layman [Plaintiff's] objectively reasonable expectations of coverage." *Saltarelli v. Bob Baker Group Medical Trust et al.*, 35 F.3d 382, 387 (9th Cir. 1994); See also May v. Metro. Life Ins. Co., 2004 U.S. Dist. LEXIS 18486, *26 (N.D. Cal. Sept. 9, 2004)("MetLife abused its discretion by requiring that Plaintiff meet an additional requirement for eligibility beyond those imposed by the Plan."). As the Ninth Circuit has explained, some

impairments are based on symptoms that are "entirely subjective."

110.   In *Quigley v. UNUM Life Ins. Co. of America,* 340 F. Supp. 2d 215, 224 (D.Conn. 2004), the Court held "[w]here the record reveals well-documented complaints of chronic pain, and there is no evidence in the record to contradict the claimant's complaints, the claim administrator, and the court, cannot discredit the claimant's subjective complaints." *Id.* at 224.

111.   Admittedly, Mrs. Swindall's primary disabling impairments have subjective components; however, they have been diagnosed by her treating physicians based on her medical history, physical examinations, and observations. The Defendant far exceeds its discretion to ascertain a claimant's credibility by characterizing the bulk of Mrs. Swindall's treatment records as somehow flowing from her own subjective reports and thus equally subject to its rejection as non-credible.

112.   Here, Mrs. Swindall provided both objective and subjective evidence of her disabling conditions. Her medical records contain well-documented complaints of intermittent weakness, severe fatigue, cognitive difficulty, anxiety, and depression.

113.   The medical records of Mrs. Swindall's treating physicians are riddled with consistent complaints by Mrs. Swindall. The nature of her subjective complaints are consistent with her diagnoses.

114.   In termination letters dated July 24, 2017, April 16, 2018, and December 20, 2018, Cigna failed to consider Mrs. Swindall's subjective complaints. These letters also failed to address the deterioration, rather than improvement, of Mrs. Swindall's conditions and the symptoms thereof.

115.   Cigna's paid reviewers utterly disregarded the subjective complaints of Mrs. Swindall. Paid reviewer Dr. Belcourt went as far as to state that "there are no objective findings that support a degree of pain or fatigue that is severe enough to preclude functioning." This assertion was even alarming to Cigna, as it sought clarification on the statement. When questioned, Dr. Belcourt clarified the nature of his accusation by stating "there is an absence of objective findings in the medical records to support functional limitations secondary to pain and fatigue." Dr. Belcourt attempted to disguise his hasty determination that Mrs. Swindall was not disabled with little to no regard for the subjective complaints that lie at the heart of her disabling conditions and prevent her from working.

116.   Additionally, many of Cigna's paid reviewers determined that Mrs. Swindall faced no restrictions and limitations despite the plethora of medical records that reflect consistent reports of pain, fatigue, memory loss, migraines, and confusion. These conditions have resulted in Mrs. Swindall's reluctance to operate a motor vehicle and otherwise affected her ability to live independently.

117.   Accordingly, given Cigna's utter disregard or Mrs. Swindall's

subjective complaints, Defendant's decision to deny benefits was substantively unreasonable.

**F.    Defendant Terminated Plaintiff's LTD Benefits without Consideration of Plaintiff's Non-Exertional Limitations.**

118.   Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

119.   As reasoned by the Court in *Rabuck v. Hartford Life and Accident Ins. Co.,* 522 F. Supp. 2d 844 (W.D. Mich. 2007), in addition to exertional restrictions and limitations, the Court must also consider non-exertional limitations including (1) intellectual and psychological limitations, including those related to the side effects of prescription medications and pain; (2) limited manual dexterity; and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations can be important aspects of vocational capacity. *Id.* at 876-77. (holding that failure to consider non-strength limitations of former company president with short-term memory limitations rendered Transferable Skills Analysis "incredible").

120.   Classifying a job based on its exertional qualifications alone "is the beginning, not the end, of determining the essential duties of an occupation." *Nemeth v. The Andersen Corp. Welfare Plan*, No. 10-cv-0795-wmc, U.S. Dist. LEXIS 190900, at *35 (W.D. Wis. February 1, 2012)(*See also Baker v. Metropolitan Life Ins. Co.*, No. 3:05-cv-262, 2006 U.S. Dist. LEXIS 92556 at *17

(M.D. Tenn. Dec. 20, 2006)("Although the practice of law is a physically 'sedentary' occupation, the claimant's occupation was in the sophisticated and demanding legal practice of mergers and acquisitions, and the vocational component of MetLife's termination of LTD benefits was arbitrary and capricious because it did not adequately take into account the claimant's cognitive deficits").

121.   Failure to consider side effects of medications in determining whether an ERISA claimant is disabled is an example of arbitrary and capricious conduct. *Godfrey v. BellSouth Telecommunications, Inc.*, 89 F.3d 755, 759 (11th Cir. 1996).

122.   Defendant denied Mrs. Swindall's LTD benefits despite the fact that her medical records indicate that she was suffering side effects from the medication she was prescribed, including weakness, dizziness, insomnia, tremors, and fatigue.

123.   One of the non-exertional limitations that Mrs. Swindall faces is limited manual dexterity. Her medical records clearly notate restrictions lifting/carrying, standing, walking, stooping, kneeling, and crouching due to balance issues and pain. Her inability to perform these important aspect of her occupation prevent her from returning to work.

124.   According to the medical record for appointment dated July 20, 2017, Dr. Hanna noted that Mrs. Swindall's symptoms are exacerbated by weight bearing, prolonged sitting, and lifting.

125. Additionally, her issues with poor balance, episodes of visual loss, tremors, and a history of falling due to such symptoms further indicate that Mrs. Swindall has limited manual dexterity.

126. The court in Mills v. Colvin, 959 F. Supp. 2d 1079, 1084 (2013) stated that "the general tolerance of off-task time is around 10-12% and an individual who needed a ten-minute break every hour would exceed that tolerance."

127. According to the medical records, Mrs. Swindall experiences conversion attacks, seizures, and other symptoms which would cause her to spend a significant amount of time off task.

128. Another consideration of non-exertional requirements is an employee's ability to regularly attend work. Frequent absenteeism caused by medical appointments or conditions would preclude employment in any reasonable occupation. A majority of the Federal Courts have found that employers will not tolerate absenteeism averaging two or more days per month. *See Conner v. Shalala*, 900 F. Supp. 994, 1003-04 (1995) stating that "in unskilled work the tolerance level would not exceed two absences per month." *See also Dennis v. Astrue*, 665 F. Supp. 2d 746, 753 (2009) stating that "employers typically will tolerate no more than two absences per month."

129. Undoubtedly, a return to work in any capacity would increase Mrs.

Swindall's symptoms and stress, requiring additional rest, medication and treatment which would lead to the inability to maintain an acceptable absentee rate.

130. Mrs. Swindall's treating physicians consistently supported her disability claim in both treatment notes and medical statements provided to Cigna and stated that Mrs. Swindall suffered non-exertional limitations, such as inability to focus or concentrate and difficulty standing/sitting for long periods of time. Her disabling conditions also prevent her from "staying on task" at least 85% of the time and prevent consistent attendance at work. Plaintiff's secondary medical issues compound her primary problems and it was unreasonable for the Defendant to fail to properly consider the impacts of Mrs. Swindall's non-exertional limitations in its decision.

131. Mrs. Swindall's concentration, persistence, and pace is so severely limited by disorientation, dizziness, fatigue and by the documented and expected side effects from her prescribed medications that she is unable to perform any work at any exertional level on a full-time basis.

132. If Mrs. Swindall's non-exertional limitations were considered by Cigna, it would have reached a different conclusion about her disability status and her entitlement to LTD benefit payments.

133. Clearly, a decision asserting that Mrs. Swindall can gainfully work in any occupation given her non-exertional impairments and side effects from her

medications is illogical.

134.   Accordingly, Defendant's decision to deny disability benefits was substantively unreasonable given the non-exertional limitations that preclude Mrs. Swindall from performing the material and substantive duties of her own occupation.

**G.   Defendant Failed to Provide Plaintiff with a Full and Fair Review.**

135.   Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

136.   The ERISA statute provides, in part, that every plan must provide participants with an adequate notice of claim denials and "a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1233(2). The Department of Labor's regulations provide that every plan must establish a procedure 'under where there will be a full and fair review of the claim and the adverse benefit determination.'" 29 C.F.R. § 2560.503-1(h)(1).

137.   The Defendant did not establish and maintain a reasonable claim procedure or provide a full and fair review of Mrs. Swindall's claim as required by ERISA.

138.   Mrs. Swindall was not given an opportunity to respond to the reports completed by Cigna's paid reviewers nor was she granted an opportunity to submit

the report to his physicians for comment, as required by Department of Labor Regulations. While Mrs. Swindall's claim is not governed by these regulations, which went into effect on April 1, 2018, courts have held that the "full and fair" review guaranteed by ERISA require[s] that the insurer provide the plaintiff with an opportunity to respond to new evidence prior to issuing an adverse benefits determination on appeal. *Hughes v. Hartford Life and Accident Ins. Co.*, 368 F. Supp. 3d 386, 389 (D. Conn. 2019).

139.   In accordance with the regulatory settlement agreement Cigna entered into with various states, Cigna agreed to take corrective actions to enhance claim procedures to improve the claim handling process of current and future insureds. Among other things, Cigna agreed to provide clear and express notice to claimants of the information to be collected and take reasonable steps to work with the claimant to identify and obtain such information.

140.   Unfortunately, Mrs. Swindall is not a resident of a state party to the regulatory settlement agreement. It appears that thus far, Cigna's ambiguous procedures in the processing of her claim are of the same type that the state commissioners found improper and a clear breach of the objectives of the settlement agreement entered into by Cigna in 2013 and flies in the face of the purpose of the ERISA statute, "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85,

90 (1983). Accordingly, Defendant's denial of Mrs. Swindall's long term disability benefits, based on insufficient evidence, was arbitrary and capricious.

141. Accordingly, Defendant's denial of Mrs. Swindall's LTD benefits denied the full and fair review of her LTD claim that she was entitled to under ERISA and therefore, Cigna's decision to terminate Mrs. Swindall's LTD benefits was arbitrary and capricious.

## H.   Defendant Failed to Justify Taking a Position Different from the Social Security Administration ("SSA") on the Question of Disability.

142. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

143. Courts have determined that the Social Security Administration's disability decision should be a "significant factor" in a Court's consideration of an administrator's decision to terminate plaintiff's disability benefits. *Glenn v. Metro Life Ins. Co.*, 461 F.3d 660, 66. *See also Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005)("the SSA determination, though certainly not binding, is far from meaningless.").

144. "[I]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the administrator's decision was arbitrary or

capricious." *Bennett v. Kemper Nat. Services, Inc.*, 514 F.3d 547, 554 (6th Cir. 2009).

145.   Indeed, "a decision by a plan administrator to seek and embrace an SSA determination for its own benefit, and then ignore or discount it later, casts additional doubt on the adequacy of their evaluation of . . . [a] claim[.]" *Calvert c. Firstar Finance, Inc.*, 409 F.3d 286, 294-95 (6th Cir. 2005). *See also Darland v. Fortis Benefits Insurance Company*, 317 F.3d 516 (6th Cir. 2003)("[I]t is totally inconsistent . . . to request that [a claimant] apply for social security disability benefits, yet avail itself of that social security determination regarding disability to contend, at the same time, that he is not disabled.").

146.   The Eleventh Circuit has previously held that insurance carriers have an "obligation to consider the evidence presented to the SSA." *Melech v. Life Ins. Co. of N.A.*, 739 F.3d 663, 666 (11th Cir. 2014). The court further noted that it was "troubled by the implication of [the carrier's] actions . . . where it ignored [claimant's] SSDI application and the evidence generated by the SSA's investigation once it no longer had a financial stake in the outcome." *Id.* at 674.

147.   When considering whether a claimant is disabled under sections 216(i) and 223(d) of the Social Security Act, the agency must determine whether the claimant has the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of

impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

148.   Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled 20 CFR 404.1520(a).

149.   At step one, the agency must determine whether the claimant is engaged in substantial gainful activity 20 CFR 404.1520(b). If an individual engages in substantial gainful activity, he or she is not disabled regardless of how severe his or her physical or mental impairments are and regardless of his or her age, education, or work experience. If the individual is not engaged in substantial gainful activity, the analysis proceeds to the second step.

150.   At step two, the agency must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."  20 CFR 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, he or she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

151.   Because one or more of Mrs. Swindall's medically determinable

impairments met a listing requirement, Mrs. Swindall automatically satisfied the criteria in step two.

152.   At step three, the agency must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525, and 404.1526. If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement, the claimant is disabled. 20 CFR 404.1509. If it does not, the analysis proceeds to the next step.

153.   Before considering step four, the agency must first determine the claimant's residual functional capacity. 20 CFR 404.1520(e). An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.

154.   Next, the agency must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. 20 CFR 404.1520(f). The term "past relevant work" means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last fifteen (15) years or fifteen (15) years prior to the date that disability must be established. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis

proceeds to the fifth and final step.

155.   At the final step of the sequential evaluation process, the agency must determine whether the claimant is able to do any other work considering his or her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he or she is not disabled. If the claimant is not able to do other work and meets the duration requirement, he or she is disabled.

156.   After reviewing Mrs. Swindall's medical records, the SSA determined that Mrs. Swindall satisfied each step of the five-step process outlined above.

157.   Social security disability determinations are made through a more stringent analysis than that required under the Plan. Despite the ironclad method developed by the SSA, it still found Mrs. Swindall disabled. Without justification, Cigna disagreed with that determination, finding Mrs. Swindall capable of performing work.

158.   Rather than addressing the substantive reason for their disagreement with the SSA determination, Cigna merely stated that the relevance of the SSDI award was reduced due to the age of the award. Additionally, in the final denial letter, Cigna described a distinction between the two analyses, but failed to mention the more stringent nature and detail required of the SSA analysis.

159.   Cigna failed to mention that the SSA re-evaluated Mrs. Swindall's SSDI award in 2014 and once again found that her disability was continuing.

Further, the SSA indicated that they would review her claim from time to time to see if she is still eligible for benefits.

160.   Cigna erroneously disagreed with the SSA's determination of disability and failed to adequately consider such determination in analyzing plaintiff's claim for LTD benefits.

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

161.   Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

162.   At all times relevant to this action, Mrs. Swindall was a participant of the Plan underwritten by Cigna and issued to Alacare Home Health Services, Inc. and was eligible to receive disability benefits under the Plan.

163.   As more fully described above, the termination and refusal to pay Mrs. Swindall's benefits under the Plan for the period from at least on or about July 24, 2017 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA.  The decision to terminate benefits to Mrs. Swindall constitutes an abuse of discretion as the decision was not reasonable and it was not based on substantial evidence.

164.   Mrs. Swindall brings this action to recover benefits due to her and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1.      The applicable standard of review in this case is *de novo*;

2.      By a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

3.      In the alternative, if the court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review;

4.      From at least July 24, 2017 through the present, Mrs. Swindall met the Plan's definition of disabled;

5.      Defendant shall pay Mrs. Swindall all benefits due for the period from at least July 2017 through the present in accordance with the Plan;

6.      Defendant shall pay to Plaintiff such prejudgment interest as allowed by law;

7.      Defendant shall pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

8.      Defendants shall pay attorney's fees for Plaintiff's counsel;

9.     Plaintiff shall receive such further relief against Defendant as the Court deems lawful, just and proper.

Respectfully submitted this the 20th day of November, 2019.

> /s/ Peter H. Burke_____
> Peter H. Burke (ASB-1992-K74P)
> PBurke@burkeharvey.com
> BURKE HARVEY, LLC
> 3535 Grandview Parkway
> Suite 100
> Birmingham, Alabama 35243
> Phone:  205-930-9091
> Fax:   205-930-9054
> *Attorney for Plaintiff Tammy W. Swindall*

 **PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AT:**

Life Insurance Company of North America
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL  36104